## McGARRAUGH v. McGARRAUGH.

### No. 5582.

Court of Civil Appeals of Texas. Amarillo.

Dec. 20, 1943.

Rehearing Denied Jan. 21, 1944.

Hoover, Hoover & Cussen and Ed Hoover, Jr., all of Canadian, for appellant.

Boyer & McConnell, of Perryton, for appellee.

STOKES, Justice.

This is a suit for divorce and the adjustment of property rights instituted by the appellee, Sybil McGarraugh, against her husband, the appellant, Albert E. McGarraugh, upon the alleged ground of cruel treatment. The appellant answered by the general issue and in a cross action set up grounds of cruelty which he alleged had been committed by the appellee and upon which he sought a decree of divorce. The case was submitted to the court without the intervention of a jury and resulted in an unusual decree, dissolving the bonds of matrimony between the parties without specifying whether, or to which party, a divorce was granted. The judgment also made division of the community property, which was considerable in amount, consisting of land, personal property, and money, and awarded the custody of the two-year-old child, Clifford Banks McGarraugh, to the appellee for nine months of each year and to the appellant for the remaining three months. The decree set aside to the use of appellee and the infant child the homestead, consisting of a five-room house located in Perryton, together with the furniture contained therein, all of which was the separate property of appellant. The occupancy, use, and possession of the homestead property by appellee was limited, however, to such time as she should remain a single woman or the child should reach the age of sixteen years. The decree provided that the crop of wheat then growing on land belonging to appellant in his separate right was community property; that certain rentals collected from an oil and gas lease on appellant's separate property was community property; that appellant and appellee should each pay one half of the taxes accruing on the homestead property during the time it is occupied by appellee; and that appellant should pay to appellee thirty dollars per month for the support of the minor child during the nine months each year in which the custody was awarded to her.

Appellant duly excepted to the judgment and has perfected an appeal to this court, assigning a number of errors upon which

he contends the judgment should be reversed. His contentions, in substance, are: First, that the court erred in awarding to appellee the use and possession of the homestead and furniture, which were his separate property; secondly, that the court erred in awarding the custody of the minor child to appellee for nine months of each year; thirdly, that the court erred in decreeing to be community property the growing crops on section 123, the separate land of appellant, and certain rentals from an oil and gas lease on land belonging to appellant, and in decreeing that the sum of $238.43, which had been paid during the coverture upon a lien against the homestead property, was a proper credit in favor of the community; and, fourthly, that error was committed by the court in refusing to charge against the community certain alimony that had been paid to appellee pending the suit, certain pasturage bills incurred in pasturing cattle belonging to the community estate, and in requiring appellant to pay one half of the taxes to accrue on the homestead property.

In support of his first contention that the court erred in decreeing to the appellee possession and use of the homestead property, appellant contends that the divorce was granted upon grounds alleged by him and not upon those alleged by appellee, and that the case should be treated as though he was awarded a divorce from her. He asserts, furthermore, that the testimony does not reveal any extenuating or special circumstances which would appeal to the conscience of the court, such as sympathy for appellee because of destitute circumstances or because of reprehensible conduct on his part, which would justify the court in decreeing the use and possession of the homestead property to appellee as a means of alleviation or of punishing appellant, and that in the absence of such extenuating circumstances the court was not warranted in appropriating his separate property to the use and benefit of appellee.

We can not agree with appellant in this contention. Article 4638, Vernon's Ann. Civ.St., provides that the court, in pronouncing a decree of divorce, shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. While there have been many cases decided by our courts in which the separate property of the losing party was set aside for the use and benefit of the one to whom a divorce was granted, and in some of them the courts have justified such action by the testimony which revealed cruelty of the losing party of such nature as to make the further living together of the parties insupportable, no case has been found where the rule was established that, under our statute, the court is not warranted in thus appropriating separate property unless the record reveals extenuating circumstances, or as a means of punishment of the guilty party. In the early case of Fitts v. Fitts, 14 Tex. 443, relied upon by the appellant, Chief Justice Hemphill, speaking for the Supreme Court and construing the statute, which was practically the same then as it is now, said: "As the parties in marriage, in this State, very often have each separate property, and as very generally there is some community property, the most obvious construction of the Statute is that the separate property should be restored to its owner respectively, and that such division of the community property be made, as may seem just and right; it being understood that a due regard must be had to the rights of the parties, that suitable provision must be made for the education and maintenance of the children, if any, and that although the community property is the primary fund from which such provision should be made as would render the division just under all the circumstances, yet there may be cases in which the separate property will be subjected to such charges, and especially in favor of the wife, as may be equitable and right: provided that the title to land and slaves be not divested."

That case has been the guiding authority for our courts throughout the years since it was rendered and the language of the statute ought to be given the meaning that has been universally ascribed to it by the courts. In many of the decisions it has been said, in effect, that a court pronouncing a decree of divorce is vested with wide discretion in the disposition of any and all property of the parties, separate or community, and that its action in the exercise of that jurisdiction should not be interfered with on appeal unless an abuse of discretion on the part of the trial court is shown or that the disposition made of some of the property is manifestly unjust and unfair. Simons v. Simons, 23 Tex. 344; Gully v. Gully, 111 Tex. 233, 231 S. W. 97, 15 A.L.R. 564; Pape v. Pape, 13 Tex.Civ.App. 99, 35 S.W. 479; Milburn v.

Milburn, Tex.Civ.App., 254 S.W. 121; Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21.

In the case last cited, Justice Greenwood of the Supreme Court held that the right of use and occupancy of homestead property, as of any other, may be adjudged to the husband, the wife, or the children. The holdings to this effect are based upon the provision of the statute which requires the court to entertain due regard for the rights of each party and their children. While the testimony in this case reveals that the portion of the community property awarded to appellee was of considerable value, there is nothing in it which indicates there is located upon any of such property a suitable residence, nor that it is of more than ordinary productive value. The record shows that appellant is possessed of a considerable amount of property, far more than the portion of the community awarded to appellee, and that his financial condition is such that he can, with little difficulty, meet the obligations imposed by the judgment. The custody of the infant son of the parties was awarded to appellee for the major portion of each year, and we think the terms of the judgment which provided her with a suitable home in which to rear and nurture the child were fitting and proper.

Appellant's contention that the divorce was not granted upon the allegations of appellee, but upon the allegations contained in his cross action and the testimony introduced by him, is not sustained by the record. The judgment did not award a divorce to either party but merely provided that the bonds of matrimony were dissolved. While it is true that the testimony offered by appellee in support of her allegations was not strong and was perhaps of such a nature as would have warranted the court in denying her a divorce, yet it was, in our opinion, sufficient to support a judgment of divorce in her favor, and since no effort was made by appellant to have the judgment made more specific in this respect, we are unable to agree with appellant in his contention that the divorce was granted upon his allegations and proof instead of those of the appellee.

We are likewise unable to agree with appellant in his second contention, that the court erred in awarding to appellee the custody of their infant son. The child was a little less than two years of age, and

it is the universal holding of the courts in all jurisdictions of this country that, other things being equal, the custody of a child of tender years should be awarded to the mother. We find nothing in the testimony that would indicate the appellee is not a proper person to have the custody of her infant son. It is true that on some occasions she went to picture shows and parties at night when her husband was at the farm, but as far as the record shows, her character and deportment were of an approved order and she always procured the services of competent persons to care for the child during her absence. The testimony shows that on a few occasions she procured the services of a young girl nine or ten years of age from a neighboring family to care for the child, but there is nothing in the testimony which shows that the little girl was not competent and did not give the child efficient care and attention during the mother's absence. The fact that the court awarded to appellee the custody of the child during nine months of each year implies that, in the opinion of the trial court, she was a suitable person to have its custody and the responsibility incident to its care and rearing. Unless the mother is shown to be unfit to assume such responsibilities, she is the proper one to have the custody and care of such a child, even though the father may be better able financially to discharge the material responsibilities incident thereto. The only fault we find with this feature of the judgment is that the custody was divided between the parents. Our courts generally have disapproved of the action of trial courts in dividing the custody of young children and, for reasons which are obvious, we heartily concur in such holdings, but since the court had authority to do so in this case and no complaint is made by either party of that phase of the decree, it will not be disturbed. Swift v. Swift, Tex. Civ.App., 37 S.W.2d 241; Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426.

The third contention presented by appellant involves three different items. The first has reference to the wheat crop grown, or growing, on section 123, and appellant complains because the court decreed the wheat to be community property. He bases the complaint upon the proposition that growing crops not yet matured are part of the realty, and asserts that since the crop was not matured and was still drawing sustenance from the soil at the time the

case was tried and judgment rendered, it should have been decreed to be his separate property. In our opinion, this contention of appellant is not supported by the law. The judgment was entered on July 24, 1943, and it is a matter of common knowledge that, in this country, wheat is harvested, or at least is ripe and ready for harvest, at that time of the year. Whether it was growing or matured or already harvested, however, makes little or no difference. It is the rule in this State that crops produced by annual cultivation, either growing or mature, are distinct in nature from the land on which they are grown. It is only in some instances, such as a sale of the land upon which crops are growing, without reservation of the crops, that they are considered a part of the land. The rule is well established that crops, whether growing or mature, may be segregated from the land by the act of the owner. Dodson v. Beaty, Tex.Civ.App., 144 S.W.2d 609; Millingar v. Foster, Tex.Com.App., 17 S.W.2d 768; Roth v. Connor, Tex.Civ.App., 25 S.W.2d 246; Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371; Kreisle v. Wilson, Tex.Civ. App., 148 S.W. 1132. In our opinion, the crop was community property, regardless of whether it was growing or matured at the time the judgment was rendered. The ground was prepared and the wheat was planted during the coverture of the parties, and it has been consistently held by our courts since an early day that the principle upon which the whole structure of our community property law rests is that whatever property that may be acquired during the coverture of husband and wife, and therefore by their joint efforts, belongs to their community estate. De Blane v. Hugh Lynch & Co., 23 Tex. 25; Cleveland v. Cole, 65 Tex. 402; Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290. In the case of Kreisle v. Wilson, supra [148 S.W. 1134], the court said: "There is no reason why annual products of the soil, capable of being, and which are destined to be, marketed annually, should be treated as real estate for all purposes just because for the time being, and awaiting maturity and removal, they are attached to the soil." Further in the opinion, it is said: "According to our view, the annual crop of grass, in view of its being periodically grown, cut, and marketed, and destined for such use and disposition, was impressed with the character of personalty while growing, and was a part of the community property, * * *." Moreover, under the above authorities, ap-

pellant could have segregated the crop from his separate land, and since the entire estate of both of the parties was submitted to the jurisdiction of the court, the court had authority to cause a severance of the crop from the land and thereby do that which appellant could have done. By the entry of the decree in which the court awarded the growing crop to the community estate, it was severed from the soil and by that means it became community property of the parties, even if it could be said it was not already such. Colonial Land & Loan Co. v. Joplin, Tex.Civ.App., 196 S.W. 626.

Appellant's second contention under this assignment is that the court erred in decreeing to the community property certain money paid to him as rentals under an oil and gas lease which he and appellee had executed upon appellant's separate lands. He asserts that this money was consideration paid for the ownership of the oil and gas or interest in the minerals in the land for additional periods of six months, and since the land was his separate property, the rentals paid for such ownership during those periods was consideration for a portion of the land and should have been decreed to be his separate property. We are not cited to any case wherein our own courts have passed upon this question. It was held by the United States Circuit Court of Appeals in Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F.2d 766, that delay rentals on oil and gas leases are rents; that they accrue by the mere lapse of time like any other rent; they do not depend on the finding or production of oil or gas, and do not exhaust the substance of the land. It was further held that such rentals bear some likeness to a bonus payment, which is held to be advance royalty, but the delay rental is not paid directly or indirectly for oil to be produced, but is for additional time in which to utilize the land. The court concluded that such payments constitute rents derived from the land and therefore are community property under the rule prevailing in this State.

In the case of Farmers' & Merchants' State Bank v. Tullos, Tex.Civ.App., 211 S. W. 847, the Court of Civil Appeals of the Eighth District held that an assignment of money rentals under an oil and gas lease was not subject to the registration laws, because it was not a deed, conveyance, or instrument concerning lands or tenements within the meaning of the registration

statute, but was personal property. That case was cited with approval in the later case of Faircloth v. Flewellen, Tex.Civ. App., 130 S.W.2d 1098.

Inasmuch as the items here involved were delay rentals and accrued merely by lapse of time like other rentals, did not depend upon the finding or production of oil or gas, and did not exhaust the substance of the land, we think they constituted personal property and belonged to the community estate.

We are unable to say that the court erred in decreeing to be community funds the sum of $238.43, paid during the coverture as instalments on a small indebtedness against the homestead. According to the testimony, a portion of this amount was paid out of proceeds received from the sale of wheat grown on the separate lands of appellant during the coverture, which we have held to be community property. The testimony also shows that appellant owned a filling station, and that he received certain sums from the sale of cows, all of which seem to have been deposited in his account at the bank, and since these small instalments were probably paid from that account, if appellant had money therein which was his separate property the funds were so commingled that it is not possible from the testimony to distinguish them.

The fourth assignment urged by appellant, under our arrangement of them, has reference to the amount paid by him to appellee as alimony pending the suit and certain pasturage bills owing by him to his father, which the court declined to charge against the community estate. Appellee's brief states that these items were included in some kind of a report filed by appellant under an order of the court. We do not find the report in the record, nor are we apprized of the basis upon which the court disposed of these funds. No findings of fact were filed by the court and neither the amounts nor dates of the payments are shown. In this state of the record we are unable to analyze these contentions. It is evident that a portion of the alimony was paid from community funds and we must assume the court had proper legal basis for the disposition made of all of it in the judgment.

Neither do we find any merit in appellant's contention that the court erred in requiring him to pay half of the taxes on the homestead property during the time it is occupied by appellee and their minor son. This property is the separate property of appellant. The judgment contemplates that appellee will occupy and use it as a home for herself and the minor child. Being the owner of the property, appellant is liable for all of the taxes and, being the father of the child, he is primarily liable for its maintenance and support. If the judgment had not required appellee to pay half of the taxes or had been silent in respect to them, appellant would necessarily have to pay all of them to protect the property. We do not think the court erred, therefore, in relieving him of one half of the taxes that will accrue upon his own property.

Appellant presents another contention, that the court erred in requiring him to pay to appellee thirty dollars per month for the support of the child during the nine months of each year while she has its custody. The record shows that appellant maintained his family in comfortable circumstances during the coverture and that he has considerable property and income. We think the amount decreed by the court was not excessive, but was reasonable under the circumstances shown by the record.

We have carefully considered all of the contentions presented by appellant and, in our opinion, no reversible error is shown. The judgment of the court below will therefore be affirmed.